UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JOSEPH HALEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 3:09-cv-0170 |
| v. ) | Judge Campbell/Brown |
| ) | **Jury Demand** |
| DAVE MILLER ) | |
| DR. INNOCENTES SATOR ) | |
| LINDA CORBIN, ) | |
| ) | |
| Defendants. ) | |

To: The Honorable Todd J. Campbell, Chief District Judge

## REPORT AND RECOMMENDATION

On February 19, 2009, the Court entered an Order (Docket Entry 4) referring this action to the Magistrate Judge "to enter a scheduling order for the management of the case, to dispose or recommend disposition of any pretrial motions under 28 U.S.C. §§ 636(b)(1)(A) and (B), and to conduct further proceedings, if necessary, under Rule 72(b), Fed. R. Civ. P., and the Local Rules of Court."

Presently pending before the Court are defendant Dr. Innocentes Sator's Motion for Summary Judgment (Docket Entry No. 78), the Plaintiff's Motion for Summary Judgment (Docket Entry No. 81), and defendant Dave Miller's Motion for Summary Judgment (Docket Entry No. 101) along with supporting memoranda, responses, and replies for each. *See also* Docket Entry Nos. 79-80, 82-84, 89-90, 106-07, 111-12, 114-15. The Magistrate Judge has carefully reviewed all

1

pleadings, discovery and disclosure materials on file, and all affidavits. Accordingly, for the reasons stated below, the Magistrate Judge respectfully recommends that the Defendants' Motions for Summary Judgment should be granted and the Plaintiff's Motion for Summary Judgment should be denied.

## I. BACKGROUND

The plaintiff is an inmate of the Tennessee Department of Correction ("TDOC") currently housed at the Northwest Correctional Complex in Tiptonville, TN. He filed this lawsuit seeking damages under 42 U.S.C. § 1983 for violations of rights protected by the Eighth Amendment alleged to have occurred at Riverbend Maximum Security Institution ("RMSI") from November 16, 2007 through December 8, 2008. The presently remaining defendants to the action are Linda Corbin, Health Services Administrator at RMSI, Dr. Innocentes Sator, Site Medical Director at RMSI, and Dave Miller, a Nurse Practitioner at RMSI.

The Plaintiff alleges that, due to improper medical treatment during his incarceration at RMSI from November 16, 2007 until December 8, 2008, he suffered from several untreated seizure episodes and also developed cirrhosis of the liver. *See* Amended Complaint (Docket Entry 66 at ¶ 28, 32, 41, and 47). The Plaintiff also alleges that when medication was finally prescribed for his seizure disorder that the medical staff did so with the knowledge that the medication was potentially harmful to him. *See id* at ¶ 58, 60.

The Plaintiff claims that prior to his initial incarceration with the TDOC he suffered from two medical conditions that required constant medical management and medication. First he complains of a seizure disorder that developed as a result of a head injury he received when he was hit in the head by a golf club in 2000. Docket Entry 124, p. 5. Second, he states he was diagnosed

2

with Hepatitis C in 2003. Docket Entry 66 at ¶ 42. The Plaintiff provides his recollection of various encounters with the medical staff at RMSI relative to the two conditions, which he believes shows that they were deliberately indifferent to his medical needs. *Id.* at 63.

On November 16, 2007, the Plaintiff was transferred to RMSI from Whiteville Correctional Facility at which time he claims that he was given no medications of any kind. *See* Amended Complaint (Docket Entry 66). The Plaintiff states that after experiencing a seizure on November 17, 2007, he was placed in the infirmary for several days and that defendant Dr. Innocentes Sator ("Dr. Sator") refused to put him on any medications. *Id.* The Plaintiff alleges that on November 19, 2007 Dave Miller ("Mr. Miller") stated to a "Cpl. Rader" that the Plaintiff was faking a seizure. However, the Plaintiff states that Mr. Miller testified at a grievance hearing that he did not know if the Plaintiff was faking a seizure or not. *Id.* Furthermore, the Plaintiff alleges that he experienced multiple seizures between December 2007 and March 2008 but received no medical treatment in response.

While incarcerated at Whiteville Correctional Facility, the Plaintiff's medication was discontinued on April 11, 2007 due to medical non-compliance after he was found with several pills in a plastic bag and admitted that he had not been taking it.[1] Docket Entry 124-1 at 37. There is no indication of Keppra being prescribed following that incident through the time the Plaintiff was transferred to RMSI. The first record from RMSI regarding the Plaintiff's complaint of seizures is a report indicating that he was seen in the "Seizure Clinic" at RMSI on November 30, 2007. *Id.* at

---

[1] Due to discrepancies in the record regarding when, why, and by whom the drug "Keppra" was prescribed, the defendants, upon order by the Magistrate Judge, produced all medical records related to this Plaintiff. References to medical records in this report and recommendation relate to those documents.

3

35.  Dr. Sator noted that no seizures were observed, the Plaintiff refused to consent to lab work, and the visit was terminated when the Plaintiff got upset and raised his voice.  *Id.*  Dr. Sator reported that he planned to hold off on prescribing Keppra and to continue observation instead.  *Id.*  He also noted that the Plaintiff had a VNS device in place to abort seizure activity if necessary.[2]  *Id.*  On December 31, 2007, after the Plaintiff complained of having another seizure, Dr. Sator completed a consultation request for the Plaintiff to see a neurologist.  *Id.* at 4.  The request was approved on January 2, 2008, and an appointment with the neurologist was set for February 20, 2008.  *Id.*

Linda Corbin ("Ms. Corbin"), the Health Services Administrator, sent a memorandum to Warden, Ricky Bell and Assistant TDOC Medical Director, Cynthia Galbreath stating that the Plaintiff had reported seizures to the staff and that they responded by observing him in the infirmary for "several days on three occasions without a single observed seizure."[3]  *Id.* at 2.  Ms. Corbin reported that the Plaintiff had requested the drug "Keppra" but that a side effect of that drug could exacerbate his liver condition.  *Id.*  Ms. Corbin further noted that the Plaintiff was scheduled for a neurology evaluation on February 20, 2008 and that no medications would be prescribed unless there was definitive evidence of seizures.  *Id.*  Subsequently, the Plaintiff was seen by neurologist, Dr. Pradumna Singh on February 20, 2008.  *Id.* at 6-9.  Dr. Singh diagnosed the Plaintiff with seizures and ordered a "sleep deprived" EEG and the drug "Keppra" with a dose of 500mg twice per day.

---

[2] The VNS (vagal nerve stimulator) is a device that is implanted in the Plaintiff's left chest wall, and he wears a magnetic bracelet on his wrist that activates the device if the Plaintiff feels he might have a seizure.  *Id.* at 57.

[3] The record indicates that he was re-admitted to the infirmary for observation due to reported seizure on February 6, 2008.  Docket Entry 124-1 at 13.

4

*Id.* Dr. Sator, in compliance with Dr. Singh's orders, requested approval for the EEG and Keppra.[4] *Id.* at 10-11. The "sleep deprived" EEG was performed on March 10, 2008 and showed "focal left fronto-central cerebral dysfunction . . . that may represent potentially epileptogenic waveforms." *Id.* at 12. Dr. Singh noted, "if patient continues to complain of his typical aura, an increase in the present dose of Keppra to 1000mg 2 times daily is warranted." *Id.* After confirmation through Dr. Singh's testing of the Plaintiff, Dr. Sator and the medical staff at RMSI continued prescribing Keppra and monitoring the Plaintiff's seizure activity. On March 27, 2008, the Plaintiff was seen in the RMSI Seizure Clinic and reported that his last seizure was approximately two weeks prior. It was noted that he was tolerating the Keppra well, and he was scheduled for routine follow-up in three months. *Id.* at 36. On April 18, 2008, the Plaintiff was admitted to the infirmary due to seizure activity where he was kept under observation until April 21, 2008. *Id.* at 30-31. Subsequently, the Plaintiff was seen by medical staff for management of Keppra and follow-up for his seizure condition approximately fifteen times from May 2008 through November 2008 including a visit to the RMSI seizure clinic. *Id.* at 16-34. When seen on September 10, 2008 at the seizure clinic, he reported that he had experience no seizures in approximately two months. *Id.* at 34. This reported absence of seizures is in stark contrast to the minimum of four to five seizures each month that he alleged to have occurred between December 2007 and March 2008. *See* Amended Complaint (Docket Entry 66, p. 4–5).

The Plaintiff alleges that during his incarceration at RMSI, the medical staff was malicious and treated him with deliberate indifference when they gave him Keppra after they knew the drug

---

[4] Keppra was not a drug within the prison's formulary and required special approval. The MRI was not possible due to the fact that the Plaintiff had the VNS device implanted in his chest.

could be harmful to his liver. Further regarding Keppra, the Plaintiff claims that they should have increased his dosage during the months of May 2008 through December 2008. He also claims that the medical staff caused cirrhosis of his liver when they did not treat him with interferon injections for Hepatitis C. Finally, the Plaintiff claims that the medical treatment irreparably injured him such that the proper form of relief would be some type of declaratory or injunctive relief against the defendants.

## II. THE MOTIONS FOR SUMMARY JUDGMENT, RESPONSES AND REPLIES

The Plaintiff and Defendants Mr. Miller and Dr. Sator have each moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Summarizing the Plaintiffs motion, he argues that the Defendants maliciously and intentionally mistreated him because they knowingly gave him a seizure medication that could be harmful to his liver (Keppra) even though they believed he was not having seizures. *See* Plaintiff's Memorandum in Support (Docket Entry 82). The Plaintiff refers to "exibit A" as evidence that the Defendants believed he was not having seizures. He further argues that the Defendants treated him as a nuisance and that they only prescribed Keppra to stop him from complaining. *Id.* In response, the Defendants point out that "exibit A" is a document from a different prison and does not reference any of the named Defendants in this matter. Docket Entry 89. The Defendants submit that Dr. Sator's affidavit filed in support of his motion for summary judgment is evidence that the Defendant's prescribed Keppra not with malicious intent, but only in response to sound medical principles. Overall, the Defendants maintain that the Plaintiff has put forth no evidence to support his allegations and is not entitled to summary judgment. *Id.* The Plaintiff's reply reiterates his standpoint that the Defendant's knew that

6

the drug could be harmful to his liver[5], they did not have evidence to support that he was in fact having seizures,[6] but they gave him the medication anyway simply because he asked for it. The Plaintiff argues that this series of alleged facts infers that the only reason the Defendants' prescribed the medication was in order to harm him. Docket Entry 96.

Dr. Sator's raises two arguments in support of his motion for summary judgement. First, he argues that the statute of limitations has expired for all or part of the claim. Docket Entry 79 at 4-6. Second, Dr. Sator argues that his medical treatment of the Plaintiff does not rise to the level of a constitutional claim. *Id.* at 6-10. Dr. Sator alleges that all medical treatment was based on sound medical principles, not malice, and that differences of opinion between a treating doctor and a prisoner do not rise to the level of a constitutional claim. *Id.* The Plaintiff does not address the statute of limitations issue in his response. Docket Entry 112. Instead, he repeats the argument that Keppra should not have been prescribed to him based on the Defendant's knowledge of his condition. In reply, Defendant Sator argues that the Plaintiff has put no forth no evidence to show that the medical plan of action in this case was improper nor any evidence to show that he has suffered because of the Keppra prescribed to him. Docket Entry 115. Dr. Sator submits that the plaintiff sought the drug "Keppra" due to uncontrolled seizures, he was given the drug based on

---

[5] Plaintiff bases this allegation on the statement in the February 15, 2008 letter from Linda Corbin to the TDOC, which states, "Given his liver condition, thrombocytopenia is a significant risk. In the absence of definitive evidence of seizures, prescribing medications - specifically Keppra and Neurontin - that could significantly exacerbate his liver condition is imprudent and potentially harmful." Docket Entry 82-1 at 2.

[6] Plaintiff bases this allegation on Dr. Sator's affidavit which states, "Mr. Haley also received a computed tomography (CT)scan of his head and an electroencephalography (EEG), neither of which revealed any clearly clinically significant findings related to seizure activity." Docket Entry 78-5 at 2.

7

sound medical principles, and that he has experienced less seizures since the drug has been given. *Id.* Dr. Sator believes that this alleged chain of facts infers successful treatment of the Plaintiff's condition.

Defendant Dave Miller's motion for summary judgment argues some similar points to that of Dr. Sator. First, he argues that the statute of limitations has expired to which the Plaintiff does not respond. Docket Entry 101-1. Next, Mr. Miller argues that his personal actions and the overall medical treatment do not rise to the level of a constitutional claim. *Id.* Last, Mr. Miller submits that he was not properly served, and, therefore, is entitled to dismissal. *Id.* In response, the Plaintiff does not address the service or statute of limitations issues. The Plaintiff argues that Mr. Miller was personally involved in the alleged constitutional violation because he was "over the disbursement of medication to inmates at [RMSI]." He infers that Mr. Miller knew or should have known that Keppra would be harmful to the Plaintiff, but disbursed it to him anyway. Docket Entry 106. In reply, Mr. Miller points out that the Plaintiff's complaint alleged only two specific incidents giving rise to his action against Mr. Miller, both of which involved claims that Mr. Miller said the Plaintiff was "faking" seizures. Docket Entry 114. Defendant Miller's reply contains the same or similar points as Dr. Sator by stating that the Plaintiff has provided no evidence to support his claims. *Id.*

### III. SUMMARY JUDGMENT STANDARD

Summary Judgment should be rendered according to Rule 56(c) "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Whether a fact is material is determined by the substantive law being applied. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). To be considered a genuine issue, it must concern evidence which, if accepted as

8

true, would allow the jury to find for the non-moving party. *Id.* The court must view all evidence and draw all reasonable inferences in favor of the non-moving party. *Matsushito Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Tysinger v. Police Dep't of City of Zanesville*, 463 F.3d 569, 587 (6th Cir. 2006). However, the opponent to the summary judgment must respond by setting out specific facts as evidence of a genuine issue to be determined at trial. Fed. R. Civ. P. 56(e). The moving party is not required to produce evidence to disprove the opponent's claim and satisfies its burden when it shows that there is no evidence to support the opponent's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380.

## IV. THE RELEVANT LAW

### A. 42 U.S.C. § 1983

A claim pursuant to 42 U.S.C. § 1983 is valid if a plaintiff alleges that: (1) his rights secured by the Constitution or United States laws have been violated; and (2) that the person who violated such rights did so while acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005). Section 1983 itself does not establish any substantive rights. *Albright v. Oliver*, 510 U.S. 266, 271 (1994); *Gardenhire v. Schubert*, 205 F.3d 303, 310 (6th Cir. 2000). However, it provides a remedy for the deprivation of rights established elsewhere. *Id.* A valid 1983 claim must state the substantive constitutional rights that were allegedly violated by the defendant. *Barrett v. Steubenville City Schools*, 388 F.3d 967, 971 (6th Cir. 2004).

9

**B. Eighth Amendment Right to Medical Care for Prisoners**

Eighth Amendment violations include actions that are deemed incompatible with the modern standards of human decency or involve the unnecessary infliction of pain. *Estelle v. Gamble*, 429 U.S. 97, 103. Prisoners' claims of Eighth Amendment violations related to medical care received in prison are based on the principle that deliberate indifference to an inmate's serious medical needs qualifies as "unnecessary and wanton infliction of pain." *Id.* at 106. To prove deliberate indifference that violates of the Eighth Amendment protection against acts or omissions that offend the "evolving standards of decency," a claim must satisfy two requirements. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). First, based on an objective standard, the alleged deprivation must be sufficiently serious in nature or pose a substantial risk of serious harm. *Id.* This means that the deprivation must result in the denial of "the minimal civilized measure of life's necessities." *Id.* Second, based on a subjective standard, the prison official must have the "sufficiently culpable state of mind" to violate the Cruel and Unusual Punishments Clause of the Eighth Amendment. *Id.* The state of mind required must be one more blameworthy than negligence. *Id.* at 835. The official must subjectively know about and disregard an excessive risk to a prisoner's health or safety. *Id.* at 836. Prison officials who act reasonably are not liable under the Eighth Amendment. *Id.* at 845. If the prisoner's complaint alleges facts that constitute a difference of opinion on medical treatment between the prisoner and medical staff, then the prisoner has not made a valid claim. *Estelle*, 429 U.S. at 105–06; *Farmer*, 511 U.S. at 835. The subjective requirement was established with the purpose to prevent the constitutionalization of claims that are properly classified as medical malpractice and negligence claims to be decided based on tort law. *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001).

# V. LEGAL CONCLUSIONS

## A. Statute of Limitations in 1983 actions

Defendants Sator and Miller attempt to dispose of all or part of this claim by arguing that the statute of limitations has expired. The Plaintiff did not respond to this argument. The Defendants correctly asserts that the statute of limitations is based on state law, which, in this case, is one year. *Wilson v. Garcia*, 471 U.S. 261, 267 (1985); *Sharpe v. Cureton*, 319 F.3d 259, 266 (6th Cir. 2003). However, when the cause of action accrues is governed by federal law. *Sharpe*, 319 F.3d at 266. Sixth Circuit precedent provides that the time period begins to run when the plaintiff "knows or has reason to know of the injury which is the basis of his action." *Sevier v. Turner*, 742 F.2d 262, 273. Here, the Defendants present a debatable case for when they believe the Plaintiff should have known about his "injury." The Magistrate Judge believes that these questions of fact cannot be resolved through summary judgment and, therefore, proceeds to analyze the merits of the Plaintiff's constitutional claim.

## B. Eighth Amendment Claim of Inadequate Medical Care

Defendants Sator and Miller assert that summary judgment should be granted in their favor because the facts of the case do not satisfy the objective or subjective components of deliberate indifference necessary to establish a constitutional claim. The Plaintiff states the opposite asserting that summary judgment should be granted in his favor.

**i. Did Defendants Sator and Miller treat or fail to treat the Plaintiff's medical needs in a way that offended society's standards of decency or posed a substantial risk of serious harm?**

Defendants Sator and Miller argue that the Plaintiff has presented no objective evidence to prove that the manner in which his medical care for alleged seizures and Hepatitis C was carried out

11

in a way that posed a significant risk of serious harm to his health. They argue that the Plaintiff's treatment was within the recognized standard of care in the surrounding medical community and was based upon sound scientific and medical principles. The Defendants point out that the Plaintiff was routinely observed and treated for seizure activity at the prison and by outside neurological specialists. They assert that the Plaintiff was not prescribed the medication Keppra when he first arrived at RMSI and that they evaluated his condition thoroughly before changing his course of treatment regarding that drug. In response to the Plaintiff's claim that the Defendants did not properly treat his Hepatitis C, the Defendants responded to the second set of interrogatories that the Plaintiff was presently stable and asymptomatic, only had a 50% chance of sustained viral suppression if treated, and would be further immuno-compromised if treated. Defendants Sator and Miller propose that the Plaintiff's complaints are simply a dispute over his course of treatment and dosage of medication, which does not establish an Eighth Amendment claim.

The Magistrate Judge opines that the Defendants' argument has merit. The objective portion of the deliberate indifference test asks if action or inaction by prison official rises to a level that offends society's standards of decency. *Farmer*, 511 U.S. at 834–35. The Plaintiff admits in his amended complaint that he was observed for his seizure condition at RMSI and was seen by a neurologist at Nashville General Hospital. Medical Records provided by RMSI support the Defendants' statements that the Plaintiff was evaluated and treated in accordance to the observations made by the prison medical staff and the neurologist. Looking at the pleadings, disclosure and discovery materials, and affidavits on file, the Magistrate believes there is no evidence to support the objective element of the Plaintiff's deliberate indifference claim. There is simply nothing in the record that leads the Magistrate Judge to believe that Defendants Sator and Miller deprived the

12

Plaintiff of medical care in a way that offended society's standards of decency or subjected him to a substantial risk of serious harm.

**ii. Did Defendants Sator and Miller possess a sufficiently culpable state of mind more blameworthy than negligence?**

In the Plaintiff's amended complaint and motion for summary judgment, he specifically alleges that the prison officials did not believe that he was suffering from seizures but prescribed Keppra for him in spite of that with the subjective knowledge that the drug could exacerbate his liver condition. The subjective element of a deliberate indifference claim is only satisfied if the defendant acts with a state of mind equivalent to reckless disregard of an excessive risk to an inmate's health or safety. *Farmer*, 511 U.S. at 836. If taken as true, the Plaintiff's allegation would leave an open question about the knowledge and intent with which Dr. Sator prescribed and Mr. Miller dispensed the Plaintiff's medication. However, the evidence presented here leaves no such open question. It appears that the Plaintiff has strategically pulled certain documents together to create an inference that the prison officials prescribed Keppra even when they knew he did not need it and knew it could be harmful to him. First, the Plaintiff points to the memorandum written by Linda Corbin, dated February 15, 2008, which states, "Given his liver condition, thrombocytopenia is a significant risk. In the abesence of definitive evidence of seizures, prescribing medications – specifically Keppra and Neurontin – that could significantly exacerbate his liver condition is imprudent and potentially harmful." *See* Docket Entry 82-1, p. 2. Next, the Plaintiff states that the Defendants have acknowledged that they sent him to two independent medical facilities, both of which found he was not having seizures. *See* Docket Entry 112, ¶ 12. Finally, the Plaintiff infers from his version of the facts that the only reason the prison officials would have prescribed Keppra to him was in order to

13

cause him harm.

After careful review of all of materials in the record, the Magistrate Judge believes that the Plaintiff's argument has no merit. It appears that the Plaintiff has taken factual information concerning his treatment out of context. The confusion is furthered by the fact that the Defendants could have been more detailed in responding to the allegations made. First, the Plaintiff fails to mention that the memorandum written by Linda Corbin referenced above thoroughly discussed the Plaintiff's seizure condition. It explained the following: the plaintiff was scheduled for a neurological evaluation the following week; that he had not been observed having seizures; that he had requested both Keppra and Neurontin to be prescribed for his seizures; that neither drug would be prescribed without more evidence of medical necessity; and that a treatment plan for his seizures would be guided by the findings of the upcoming neurological evaluation. *See* Docket Entry 82-1, p. 2. In fact, medical records provided by RMSI show that the Plaintiff was seen by neurologist, Dr. Singh on February 20, 2008 who diagnosed the Plaintiff with seizures and prescribed Keppra. As Ms. Corbin's memorandum suggested, the prison officials followed Dr. Singh's advice and prescribed the drug. It is further documented in the medical records that the Plaintiff underwent an EEG test on March 10, 2008 which revealed brain wave abnormalities. While Dr. Sator's affidavit states that the Plaintiff underwent two tests that did not reveal any "clearly clinically significant findings related to seizure activity," no document suggests that the Defendants interpreted the independent testing to mean that the Plaintiff was not having seizures. The Plaintiff was kept on Keppra during the remainder of his incarceration at RMSI and reported fewer incidents of seizures after being prescribed Keppra. Given the evidence, the Magistrate Judge believes that no reasonable juror could find that the Defendants prescribed Keppra with the sufficiently culpable state of mind

14

of reckless disregard for the Plaintiff's serious liver condition.

In other parts of his amended complaint, the Plaintiff claims that he suffered from untreated seizures from the time he arrived at RMSI until March 2008. While this is not the focus of the cross-motions for summary judgment, the Magistrate Judge feels that it is best to dispense of the issue of whether the alleged non-treatment of the Plaintiff's seizures could constitute deliberate indifference. In response to Plaintiff's Second Set of Interrogatories, the Defendants answer that Keppra was discontinued for this Plaintiff on April 11, 2007 while he was incarcerated at a facility in Whiteville, Tennessee and that the Plaintiff was not prescribed the drug when he was transferred to RMSI in November 2007. While the Plaintiff immediately requested Keppra from the medical staff at RMSI, it is documented that the Plaintiff had a device implanted in his chest to control seizures and that he would continue to be monitored. *See* Docket Entry 124-1, p. 35. Medical records show that on December 31, 2007, Dr. Sator completed a consultation request form so that the Plaintiff could be seen by a neurologist. *Id.* at 4. The Plaintiff was seen shortly thereafter on February 20, 2008. *Id.* at 5–7. Applying the objective test for deliberate indifference, the Magistrate Judge believes that there is no evidence to support that the treatment plan from the time of the Plaintiff's transfer to RMSI through the time he received Keppra offends society's standards of decency or posed a serious risk to the Plaintiff's health. Evaluating the situation from the subjective standpoint, the undersigned believes that there is no evidence in the record to support a claim that prison officials disregarded the Plaintiff's seizure complaints with knowledge that their action or inaction would pose a significant risk to the Plaintiff's health.

In the Magistrate Judge's assessment, the record in this action does not show that the plaintiff was treated with deliberate indifference regarding his seizure condition or Hepatitis C in a way that

15

violates the spirit of the Cruel and Unusual Punishments Clause of the Eighth Amendment. The Plaintiff was evaluated at RMSI on a regular basis and was referred to and evaluated by an outside physician for specialized care. While the Plaintiff may have been unhappy with the course of treatment, the evidence shows that his complaints were not ignored and that he was not treated "maliciously." The record indicates that the Plaintiff's Hepatitis C was not treated with interferon therapy because he was asymptomatic and the treatment would have further compromised his immune system. Furthermore, while the Plaintiff complains that non-treatment caused cirrhosis of the liver, the medical record shows that his liver cirrhosis was already at stage 3–4 of 4 on February 15, 2008. Docket Entry 82.1, p.1. The record also shows that the Plaintiff was evaluated for a period of time while RMSI staff observed and sought specialized care for the Plaintiff in order to determine whether to prescribe a drug known to have adverse side effects.

The Magistrate Judge opines that this case is simply one of a difference of opinion between the Plaintiff and the prison officials. He believes that the prison officials did not want to treat him with interferon therapy because the cost of the medication outweighed the value that the prison placed on his life. This is simply not accurate. He also believes that the Defendants did not treat his seizure disorder adequately and then only prescribed Keppra to stop his constant complaints. The Plaintiff believes that he suffered many seizures unnecessarily and that with more attentive care, he would have been treated in a way that minimized further damage to his body systems. However, when a prisoner disputes the adequacy of his care, federal courts are hesitant to question medical judgments in such a way that constitutionalizes a case hat may be more suitably based in tort law. *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976). The fact that an inmate disagrees with his treatment is insufficient to support an Eighth Amendment claim. *Thomas v. Coble*, 55 Fed.Appx.

16

748, 749 (6th Cir. 2003). *See also Mabry v. Antonini*, 289 Fed.Appx. 895, 902 (6th Cir. 2008) (ruling that an inmate's complaint that doctor did not order specific tests or provide specific medications, treatment, or dosages does not state a constitutional claim)*; Brock v. Crall*, 8 Fed.Appx. 439, 440 (6th Cir. 2001) (stating allegations that constitute a difference of opinion between inmate and medical staff do not rise to the level of deliberate indifference in support of an Eighth Amendment claim).

With the elements of actionable medical care in the prison setting set forth by *Estelle* and *Farmer*, it is clear that the acts or omissions of prison officials must rise to a level that is obviously offensive and egregious from an objective standpoint and subjectively in a way that the facts of the case support. The Plaintiff in the instant case has put forth no evidence to support his claims that the prison staff followed any particular plan of treatment solely in order to harm him. The Magistrate Judge believes that no reasonable jury could find that the Plaintiff was treated with deliberate indifference with respect to the treatment of the Plaintiff's Hepatitis C or seizure condition.

## C. Alternative arguements not necessary to the conclusion

In addition to Defendants' assertion that their actions do not rise to the level of a constitutional claim, the Defendant Miller also raises other basis to attack the Plaintiff's claim. He sates that he was not served properly and that he was not directly responsible for any of the care provided to the Plaintiff. While one of these defenses may be successful, the Magistrate Judge believes there is no need to consider them individually because they are not necessary to reach the proper conclusion in this action.

Defendant Linda Corbin has not filed a dispositive motion on the merits of this case.

17

Accordingly, by separate order, the Magistrate Judge will instruct the Plaintiff to show cause as to why the court should not dismiss this case as to Defendant Corbin on the same grounds as discussed above. The Plaintiff will be instructed that if no cause is shown within twenty-one (21) days, a report and recommendation will be issued to dismiss the case against Defendant Corbin with prejudice.

## **RECOMMENDATION**

For the reasons discussed above, the undersigned respectfully **RECOMMENDS** that the Court DENY the Plaintiff's Motion for Summary Judgment (Docket Entry 81), GRANT Defendant Dr. Innocentes Sator's Motion for Summary Judgment (Docket Entry 78) and GRANT Defendant Dave Miller's Motion for Summary Judgment (Docket Entry 101).

Any party has fourteen (14) days from receipt of this Report and Recommendation in which to file any written objection to it with the District Court. Any party opposing said objections shall have fourteen (14) days from receipt of any objections filed in which to file any responses to said objections. Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *Thomas v. Arn*, 474 U.S. 140 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004) (en banc).

ENTERED this 14th day of July, 2010.

/S/ Joe B. Brown
JOE B. BROWN
United States Magistrate Judge